UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| D.F. PRAY, INC. )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>FK CONSTRUCTION FUNDING, LLC, )<br>)<br>Defendant. )<br>) | Civil Action No. |

**COMPLAINT AND JURY DEMAND**

**INTRODUCTION**

1. Frank Skelly ("Skelly"), the self-proclaimed factor king, operates what he calls a cash management and funds control business under the name FK Construction Funding, LLC ("FK"). Through FK, Skelly induces financially struggling subcontractors, including Amps Electric, Inc. ("Amps"), to sell their accounts receivable at a significant discount in exchange for immediate payment. D.F. Pray, Inc. ("Pray"), a general contractor, retained Amps to complete a $2.85 million subcontract but unbeknownst to Pray, Amps sold its $2.85 million in accounts receivable to FK. In an effort to collect its purchased accounts receivable, FK drafted, signed and certified inflated applications for payment falsely representing that it either had or would pay vendors, suppliers and the Union (for labor on the project). Pray relied upon FK's false representations of payment, paid FK more than $1.7 million, but FK failed to pay the vendors, suppliers and the Union, and instead diverted the money for its own purpose. As a result of FK's false representations and diversion of funds, Amps defaulted under its subcontract, Pray paid $1.484 million to complete Amps' remaining work (and pay the unpaid vendors and suppliers),

and anticipates incurring more than $400,000 to complete the remaining work on the project. Through this Action, Pray seeks to recover its damages from FK.

## PARTIES

2. Pray is a Rhode Island corporation with a principal place of business at 25 Anthony Street, Seekonk, Massachusetts. Pray is a regional general contractor that performs multi-family, ground-up construction. Brighton Gardner Properties LLC, a local Massachusetts developer (the "Owner"), retained Pray to complete a mixed-use 129 unit, 120,000 square-foot complex located at 89 Brighton Avenue, Boston, Massachusetts (the "Project").

3. FK is a limited liability company with a principal place of business at 218 US Highway One Tequesta, Florida. On information and belief, FK's members reside in states other than Massachusetts. On information and belief, Skelly owns and operates FK and was previously convicted of defrauding thousands of investors of more than $80 million in a so-called "pump and dump" scheme.

## JURISDICITON

4. This Court has original subject matter jurisdiction over this action on the basis of 28 U.S.C. § 1332. Specifically, there is complete diversity between Pray, a Rhode Island corporation with a principal place of business in Massachusetts, and FK, a Florida limited liability company, whose members are, on information and belief, residents of Florida, and the amount in dispute exceeds $75,000.

## FACTUAL BACKGROUND

5. Skelly, a self-proclaimed factoring expert with more than 37 years' of experience, operates FK, a division of Factor King. FK is engaged in the business of "factoring," which is a type financing designed to allow struggling companies sell a portion or all of their outstanding

invoices (or accounts receivable) to a third party factoring company in exchange for a discounted immediate payment. After payment, the factor assumes the risk associated with collection.

6. Through FK, Skelly buys accounts receivable at a discount (and assumes the risk of delayed or unpaid accounts) but markets his services to struggling (and unsuspecting) subcontractors, like Amps, as "E-Z cash management, funds control and risk mitigation."

7. On November 1, 2019, the Owner retained Pray to complete the Project.

8. By Subcontract dated March 10, 2020 (the "Subcontract"), Pray retained Amps to perform electrical work on the Project of an original sum of $2.85 million (the "Subcontract"). Subcontract, a copy of which is attached as **Exhibit A**.

9. The Subcontract expressly restricted the use of any funds received for work performed on the Project. In particular, the Subcontract:

- required Amps to use "***any money it shall receive in payment for Work performed under this Subcontract…to discharge its financial obligations to those who furnish labor, materials and equipment to the Project or otherwise arising from the Project***. Upon payment by the Contractor, the Subcontractor shall promptly pay its sub-contractors, suppliers and vendors the amounts to which they are entitled;" and

- obligated Amps to defend, indemnify and hold harmless Pray from and against claims and damages "arising out of or resulting from performance of the Subcontractor's Work;" and for any "liens, claims demands arising from the Work of the Subcontractor or others claiming by, through or under the Subcontractor" "for payment of any labor performed or material or equipment furnished in connection with improvements to real property or related to the Project, or "for any breach of contract by Subcontractor ."

(Emphasis added).

10. With the Subcontract signed, by Factor and Security Agreement dated June 10, 2020 (the "Factor Agreement"), Amps (as "Seller") granted a right to FK (as "Purchaser") to purchase accounts receivable. Factor Agreement, a copy of which is attached as **Exhibit B**. The Factor Agreement granted FK access to and the right to inspect "work papers, management

reports and other information" related to Amps," shifted the risk of loss from any account purchased to FK, and required that Amps provide:

> a contractor's payment affidavit…identifying all of [Amps'] subcontractors, sub-subcontractors, suppliers and vendors individuals on [Amps'] payroll, individuals and entities to whom [Amps] owes any union dues and any other third party who has lien rights against a Factored Job, and the amount of money, if any owed to each and (ii) such documentation supporting and evidencing the Account as Purchaser shall from time to time request.

11. FK knew at the time it purchased the accounts receivable from Amps that payment was subject to the terms and conditions of the Subcontract and that it was obligated "[u]pon payment" by Pray to "promptly pay" Amps' "sub-contractors, suppliers and vendors the amounts to which they are entitled."

12. Through the Factor Agreement, Amps transferred control of its operations to FK. In particular, FK:

- reviewed, approved and signed periodic applications for payment, lien waivers and change orders;

- operated, maintained and transferred money from Amps' bank accounts; and

- paid vendors, suppliers and Union laborers.

13. Through its active involvement with Amps, FK had knowledge of Amps' assets, liabilities, and revenue.

14. To complete the work under the Subcontract, Amps:

- retained labor from IBEW Local 103 (the "Union") and was obligated to pay Local 103 Health Fund, IBEW 103 Pension Fund, and IBEW Local 103 Deferred Income Fund (the "Funds");

- signed vendor agreements with suppliers including Turtle & Hughes, Inc. ("T&H"); and

- entered into rental agreements with Sunbelt Rentals, Inc. for equipment to complete the work.

15. Amps then transferred control of its operations to FK and FK diverted all of Amps' revenue to an account it alone controlled. With sole access to and control of Amps' revenue, FK distributed the revenue to itself and select vendors and suppliers of Amps.

16. With control of Amps' operations, FK completed Applications and Certifications of Payment, change orders and other contract documents, and submitted them to Pray for approval and payment.

17. In particular, Amps drafted, completed and certified Applications for Payment:

- dated February 28, 2021 in the amount of $105,450;
- dated March 31, 2021 in the amount of $274,977; and
- dated April 30, 2021 in the amount of $315,679.

18. With each Application for Payment, FK completed and signed a lien waiver and certified that:

> The Work covered under this Application for Payment has been completed in accordance with the Contract Documents, ***that all amounts have been paid by the Contractor for Work for which previous Certifications for Payment were issued*** and payment received from the Owner and that current payment amount shown herein is now due.

19. FK signed the Lien Waiver to induce Pray to pay the Applications.

20. Unbeknownst to Pray, these representations were false. FK knew that vendors, suppliers and the Funds were owed significant amounts of money but never disclosed the existing debts to Pray.

21. Rather, in an effort to secure payment, FK represented to Pray that all vendors, suppliers and the Funds were paid or would be paid in full up through the date of the Application of Payment.

22. Pray relied upon FK's representations and made payment to FK.

23. FK subsequently submitted:

- an Application for Payment dated May 31, 2021in the amount of $507,667.24; and

- an Application for Payment dated June 30, 2021 in the amount of $144,058.40.

24. FK knew that vendors, suppliers and the Funds were owed significant amounts of money but never disclosed the existing debts to Pray. Specifically, FK knew that Amps' vendors, suppliers and the Funds were owed than $2 million and that Amps had insufficient funds to complete the work on the Project.

25. Instead, to induce Pray to make payment, FK certified each application for payment representing "*that all amounts have been paid by the Contractor for Work for which previous Certifications for Payment were issued.*"

26. FK knew that the certifications were false.

27. Pray relied upon FK's false certifications and issued a payment dated June 11, 2021 in the amount of $315,679.65 and a payment dated July 8, 2021 in the amount of $507,667.25.

28. On information and belief, FK diverted these payments and others to costs and expenses unrelated to the Project and for its own purposes.

29. On information and belief, FK never paid the vendors and suppliers the amounts that were owed for the materials and labor supplied.

30. On information and belief, FK exercised dominion and control over at least $200,000 of the Subcontract proceeds without right.

31. On July 13, 2021, FK deposited the July 8, 2021 check in the amount of $507,667.25.

32.     On July 14, 2021, Amps abandoned the Project. On information and belief, Amps abandoned the Project in part based upon FK's diversion of Amps' revenue.

33.     Pray subsequently terminated the Subcontract and retained a completion subcontractor to complete Amps' work.

34.     In the interim, the Funds recorded a Notice of Contract on the Project claiming that Amps owed $498,787 "in unpaid fringe benefit, contributions, working dues, holiday and vacation amounts deducted from employees' wages for labor furnished and performed;" and then on August 13, 2021, filed an Involuntary Petition for Bankruptcy against Amps claiming more than $1.4 million. Notice of Contract, a copy of which is attached as **Exhibit C**; Bankruptcy Petition, a copy of which is attached as **Exhibit D**.[1]

## CAUSES OF ACTION

### COUNT I
### MISREPRESENTATION

35.     Pray repeats and realleges paragraphs 1 to 34 as if fully set forth herein.

36.     FK made false representations of material fact intended to induce Pray to make payment.

37.     In particular, FK certified the Applications for Payment representing to Pray that all vendors, suppliers and the Funds had been paid up through the application for payment

38.     FK knew that these representations were false.

39.     Pray relied upon these representations and paid FK more than $1.7 million.

---

[1]     FK has filed an action against Pray pending in Massachusetts Superior Court alleging *inter alia* breach of contract and promissory estoppel related to Pray's alleged failure to pay an Application for Payment in the amount of approximately $144,000. Pray has moved to dismiss the Complaint.

39. As a result of FK's false representations Pray has sustained and continues to sustain damages.

## COUNT II
## INSTRUMENTALITY/JOINT VENTURE

40. Pray repeats and realleges paragraphs 1 to 39 as if fully set forth herein.

41. FK assumed and exercised actual, participatory dominion and control over Amps by, among other things:

- managing and directing business operations, including negotiating, preparing, submitting and signing contract documents including change orders and applications for payment;

- controlling Amps' funds and managing Amps' revenue for its own purposes;

- directing all of Amp's revenue to a specific FK controlled account, directing and controlling payments of Amps' creditors, suppliers, laborers (including the Funds) and vendors;

- diverting funds for its own purpose and for purposes unrelated to the Project;

- actively communicating to Pray and others (including specific vendors and suppliers) that FK intended to pay with Amps' funds; and

- negotiating with Pray and other (including specific vendors and suppliers) in an effort to leverage its control over Amps' funds for its own direct benefit.

42. FK misused and abused its control of Amps by diverting funds from the Project and paying itself and other specific creditors to advance FK's own interest.

43. By virtue of its actual, participatory dominion and total control of Amps and its misuse and abuse of its control, FK is liable to Pray.

## COUNT IV
## UNJUST ENRICHMENT

44. Pray repeats and realleges paragraphs 1 to 43 as if fully set forth herein.

45. Pray conferred a benefit upon FK through, *inter alia*, payment of the fraudulent Applications and Certifications for Payment and Lien Waivers.

46. FK had knowledge of the benefit conferred by Pray.

47. Retention of the benefit under the circumstances is inequitable where, *inter alia*, Pray was induced to make payment through Amps' and FK's misrepresentations, FK failed to pay the subcontractors, vendors and suppliers as represented in the Applications, Certifications, and Lien Waivers and in accordance with the terms of the Subcontract, and Pray incurred significant costs to complete Amps' work and pay the unpaid suppliers and vendors.

## COUNT V
## VIOLATION OF CHAPTER 93A, §§ 2, 11

48. Pray repeats and realleges paragraphs 1 to 47 as if fully set forth herein.

49. All times material and relevant, Pray and FK were engaged in trade or commerce in the Commonwealth of Massachusetts as defined in 93A, 2 and 11 and the interpretive regulations and case law related thereto.

50. The actions of FK which constitute violations of Chapter 93A include without limitation:

- inducing Pray to make payments through intentionally false payment certifications;
- representing to Pray that FK would pay vendors, suppliers and the Funds and then diverting the money for its own benefit;
- intentionally diverting Amps' revenue to force Amps to default under the terms of the Subcontract; and
- diverting revenue from Amps rendering it essentially insolvent.

51. As a result, Pray has incurred and continue to incur damages.

**REQUEST FOR RELIEF**

WHEREFOR, Pray requests that the Court:

    (a)    enter judgment in its favor and against FK on Counts I to IV awarding Pray its damages, attorneys fees and costs;

    (b)    enter judgment in its favor and against FK on Count V awarding Pray no less than double and no more than treble its actual damages, attorneys fees and costs; and

    (c)    award such other and further relief that is just and equitable

**PRAY DEMAND A JURY TRIAL ON ALL COUNTS SO TRIABLE**

D.F. PRAY, INC.

By its attorney,

*/s/ Richard E. Briansky*
Richard E. Briansky (BBO# 632709)
Amy B. Hackett (BBO# 676345)
PECKAR & ABRAMSON PC
28 State Street, Suite 1802
Boston, MA  02109
Tel: (617) 342-6824
Fax: (617) 342-6899
Email: rbriansky@pecklaw.com
       ahackett@pecklaw.com

Dated: December 17, 2021